[Case No. 2011AP2033-CR]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Kim M. VERHAGEN, Defendant-Appellant.†

[Case No. 2011AP2192-CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher J. NICKLES, Defendant-Appellant.†

[Case No. 2011AP2478-CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Craig M. VAN ASTEN, Defendant-Appellant.†

[Case No. 2011AP2889-CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

James L. BELL, Defendant-Appellant.†

Court of Appeals

† Petition to Review filed.

*Nos. 2011AP2033–CR, 2011AP2192–CR, 2011AP2478–CR, 2011AP2889–CR. Submitted on briefs October 16, 2012. —Decided January 23, 2013.*

2013 WI App 16

(Also reported in 827 N.W.2d 891.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *John Miller Carroll* of *John Miller Carroll Law Office*, Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Cynthia L. Vopal, assistant district attorney,* Green Bay; and *Michael C. Sanders, assistant attorney general,* and *J.B. Van Hollen, attorney general.*

Before Hoover, P.J., Mangerson, J., and Thomas Cane, Reserve Judge

¶ 1. MANGERSON, J. Kim Verhagen,[1] Christopher Nickles, Craig Van Asten and James Bell appeal[2] judgments of conviction for criminal operating while intoxicated (OWI). In each case, the appellant contends the circuit court erroneously denied his pretrial motion seeking an order requiring the State to prove before the jury and beyond a reasonable doubt all elements of his first-offense OWI conviction. We conclude the elements of an underlying first-offense OWI need not be proven to a jury beyond a reasonable doubt in a criminal proceeding for a subsequent OWI violation.

¶ 2. Separately, Van Asten mounts a collateral attack on a prior conviction for second-offense OWI. He contends this conviction was obtained in violation of his Sixth Amendment right to counsel. We conclude Van Asten has failed to make a prima facie showing that he was denied the right to counsel.

¶ 3. We affirm each appellant's conviction.

---

[1] The chief judge of the court of appeals, on the court's own motion, on October 9, 2012, ordered that case No. 2011AP2033–CR *State of Wisconsin v. Kim M. Verhagen* be decided by a three-judge panel.

[2] The court, on its own motion, ordered these appeals consolidated on October 9, 2012. For ease of reading, we shall refer to these individuals collectively as "the appellants."

## BACKGROUND

¶ 4. The relevant facts are undisputed. The facts pertaining to each individual appellant are as follows:

*Kim Verhagen*

¶ 5. The State filed a criminal complaint on November 29, 2010, charging Verhagen with third-offense OWI with an alcohol concentration enhancer. Verhagen struck a parked vehicle and admitted he had been drinking and driving. The complaint indicated that at the time of arrest, a computer check disclosed Verhagen had been previously convicted of OWI in 1998 and 2001.

¶ 6. Verhagen filed a pretrial motion based on *New Jersey v. Apprendi*, 530 U.S. 466 (2000). In it, he sought an order requiring the State to prove beyond a reasonable doubt, and to a jury, the facts underlying his civil first-offense OWI. He also argued that, without any such requirement, Wis. Stat. § 343.307(1), describing which convictions are to be counted to determine the penalty for OWI, was unconstitutional as applied.[3] The circuit court denied this motion, and Verhagen pleaded no contest.

*Christopher Nickles*

¶ 7. Nickles was charged with fifth-offense OWI on November 29, 2010. He made an improper turn and, when stopped, failed field sobriety testing. The complaint alleged that Nickles had been previously convicted of OWI-related offenses in 1991, 1993, 1994, and

---

[3] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

1999. Like Verhagen, Nickles filed a pretrial motion invoking *Apprendi* and mounting an as-applied challenge to Wɪs. Sᴛᴀᴛ. § 343.307(1). The court denied the motion and Nickles pleaded no contest.

*Craig Van Asten*

¶ 8. Van Asten was charged with fifth-offense OWI on March 15, 2010. During a brief detention, a Kaukauna police officer smelled intoxicants on Van Asten, who displayed a "poor performance" on subsequent field sobriety tests. Van Asten admitted to having four prior OWI-related offenses, in 1996, 1999, and twice in 2001.

¶ 9. Van Asten filed a pretrial motion collaterally attacking his second OWI-related conviction, case number 1999–CT-145, on the ground that his plea had been entered without a valid waiver of counsel. In connection with this motion, Van Asten filed an affidavit in which he stated that, to the best of his knowledge, he was not "made aware by the Court ... of the difficulties or disadvantages of not having counsel on a matter such as this ... ." He also stated that, to the best of his knowledge, the court did not make him aware of the seriousness of the charges against him or the general range of penalties that could be imposed, particularly the length of time his driver's license could be suspended.

¶ 10. The court held an evidentiary hearing on Van Asten's collateral attack. Judge Des Jardins, who presided over Van Asten's jury trial, testified he had no specific recollection of Van Asten's case, but stated he generally discusses the right to an attorney with the accused. Judge Des Jardins then described his pro se pretrial process:

What I had done in the past is go back to chambers with a pro se individual and discuss sort of the ground rules for the trial, and then you bring up the subject of an attorney and advise them generally that if they wanted to have an attorney, there would be a continuance and explain to him ... you could benefit from an attorney. If you had an attorney, might be able to discover a defense to the case, also discover facts that could lessen the penalty or negotiate a better offer than what you already have, would do those types of things, and you know, see if they wanted to have an attorney and advise them if you want one, it's going to cost you the price of the jury.

¶ 11. Van Asten also testified. He "slightly" remembered his 1999 case and at first stated he did not remember whether anyone spoke with him about retaining an attorney. On cross-examination, however, he testified that no one mentioned his right to an attorney. Van Asten admitted that the minutes of his initial appearance in the 1999 case indicated the complaint had been read and he had been "advised of rights and options." He also admitted he had requested a public defender and, when informed he was ineligible, subsequently requested more time to obtain counsel.

¶ 12. The circuit court rejected Van Asten's collateral attack. It found that Van Asten was aware of his right to, and the potential benefits of, an attorney. The court stressed Van Asten's testimony that he "doesn't really remember the details," Van Asten's request for a public defender, Judge Des Jardins's testimony regarding his standard practice, and the initial appearance minutes indicating Van Asten had been advised of his rights. The court determined Van Asten failed to establish a prima facie case that he had been denied his right to counsel.

¶ 13. Van Asten also filed a motion seeking an order requiring the State to prove the elements of his first offense under *Apprendi* and challenging the constitutionality of WIS. STAT. § 343.307(1). The court denied the motion and Van Asten pleaded no contest to fifth-offense OWI.

*James Bell*

¶ 14. Bell was charged in a five-count complaint with fifth-offense OWI, refusal to submit to intoxication testing, operating after revocation, disorderly conduct, and misdemeanor bail jumping. On October 2, 2009, an individual appeared in person at the Shawano Police Department and informed them that an intoxicated man was about to get in a car parked nearby. She provided the license plate number and an officer located the vehicle, which was registered to and being driven by Bell. Bell was severely impaired and refused to submit to testing. He then threatened an officer and urinated inside the rear of the patrol vehicle on the way to the Shawano County Jail. A review of Department of Transportation records revealed Bell had been convicted of four prior OWI-related offenses, in 1990, 1992, 2000, and 2002.

¶ 15. Like the other appellants, Bell sought an order under *Apprendi* and raised an as-applied challenge to the constitutionality of WIS. STAT. § 343.307(1). The motion was denied and Bell pled no contest to the OWI charge.

## DISCUSSION

■

¶ 16. These consolidated appeals present a common issue: whether, in a prosecution for a subsequent OWI-related offense, the State is required to prove the elements of an underlying first-offense OWI to a jury

beyond a reasonable doubt for the purpose of penalty enhancement. The appellants argue that WIS. STAT. § 343.307(1), which describes what convictions must be counted when determining the penalty for drunk driving, is unconstitutional as applied to them because it required the courts to count civil convictions obtained without the guarantees of a jury trial or criminal burden of proof.

¶ 17. The application of constitutional standards to undisputed facts presents a question of law, which we review de novo. *State v. Foust*, 214 Wis. 2d 568, 571–72, 570 N.W.2d 905 (Ct. App. 1997). Interpretation and application of state OWI statutes also present questions of law. *State v. Saunders*, 2002 WI 107, ¶ 15, 255 Wis. 2d 589, 649 N.W.2d 263. "[A] statute is presumed constitutional, and the party seeking to overcome the presumption must prove the statute unconstitutional beyond a reasonable doubt." *State v. Janssen*, 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998). "It is insufficient to merely establish doubt as to an act's constitutionality nor is it sufficient to establish the act is probably unconstitutional." *Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 577, 364 N.W.2d 149 (1985).

¶ 18. We begin with a brief discussion of the OWI penalty scheme. In Wisconsin, a first-offense OWI is punishable only by forfeiture. *See* WIS. STAT. §§ 346.63(1); 346.65(2)(am)1. It is not a crime. *See* WIS. STAT. § 939.12. However, second and subsequent violations of § 346.63(1) are crimes and are subject to penalties that increase with the number of prior violations. *See* § 346.65(2)(am)2.-7. In determining the number of prior violations, § 346.65 generally directs the court to consider certain enumerated offenses "plus the total number of suspensions, revocations, and other

207

convictions counted under s. 343.307(1) ... ." Paragraph (a) of WIS. STAT. § 343.307(1) directs that a court count all convictions under § 346.63(1), including civil first-offense violations.

■■

¶ 19. The appellants' argument is rooted in certain fundamental and well-established constitutional doctrines. *See Apprendi*, 530 U.S. at 476–85. Due process imposes on the government the burden of proving each essential element of a charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *State v. McAllister*, 107 Wis. 2d 532, 533, 319 N.W.2d 865 (1982). Under both the federal and state constitutions, a criminal defendant has a fundamental right to have the jury determine whether the state has met its burden. *See State v. Anderson*, 2002 WI 7, ¶ 10, 249 Wis. 2d 586, 638 N.W.2d 301; *McAllister*, 107 Wis. 2d at 533.

¶ 20. The appellants contend these doctrines were given new meaning in *Apprendi*. In that case, the Supreme Court determined that New Jersey's "hate crime" statute, which permitted a judge to impose an increased penalty if the court found, by a preponderance of the evidence, that the defendant's purpose was to intimidate the victim based on a particular characteristic, was unconstitutional. *Apprendi*, 530 U.S. at 491. Apprendi argued the New Jersey law violated his constitutional right to have a jury find racial bias beyond a reasonable doubt. *Id.* at 475–76.

■

¶ 21. In *Apprendi*, the Supreme Court was clear that the State's power to circumvent *Winship* and the jury guarantee is quite limited. Constitutional limits exist to the State's authority to define away facts necessary to constitute a criminal offense, and a state

scheme that keeps from the jury determination of facts that expose a defendant to greater punishment may raise serious constitutional concern. *Apprendi*, 530 U.S. at 486 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 85–88 (1986)).

¶ 22. However, the Court elected to adhere to what it called "an exceptional departure" to historic practices. *Apprendi*, 530 U.S. at 487 (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)). In *Almendarez-Torres*, the defendant was charged with returning to the United States after being deported, which ordinarily carried a maximum sentence of two years. *Id.* at 227. After Almendarez-Torres entered a guilty plea and admitted that the deportation had taken place pursuant to three earlier aggravated felony convictions, the United States filed a presentence report arguing for an enhanced sentence based on a different subsection. *Id.* In permitting this procedure, our Supreme Court noted the "relevant statutory subject matter" was recidivism, which is "as typical a sentencing factor as one might imagine." *Id.* at 230.

¶ 23. The *Apprendi* Court declined to overrule *Almendarez-Torres*, holding that recidivism need not be presented to the jury for proof beyond a reasonable doubt.[4] It is generally within the court's sentencing

_____

[4] Although the *Apprendi* Court stated that *Almendarez-Torres* was arguably incorrectly decided, it did not take issue with *Almendarez-Torres*' holding that recidivism is distinct from other penalty enhancers. *New Jersey v. Apprendi*, 530 U.S. 466 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Instead, the majority would have sided with Justice Scalia's dissent in *Almendarez-Torres*. *See Apprendi*, 530 U.S. at 489 n.15. Justice Scalia would have avoided the constitutional issue altogether by interpreting the relevant statute to define

discretion to issue an enhanced sentence based on "the prior commission of a serious crime." *See Apprendi*, 530 U.S. at 488; *see also Harris v. State*, 75 Wis. 2d 513, 519, 250 N.W.2d 7 (1977) (sentencing factors include the defendant's past record of criminal offenses and history of undesirable behavior patterns). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. A court may order an enhanced sentence based on a defendant's prior conviction without running afoul of the rule that the legislature ordinarily cannot withdraw from the jury the determination of facts, under the criminal burden of proof, that increase the prescribed range of penalties. *Id.* (citing *Jones v. United States*, 526 U.S. 227, 252–54 (1998)).

¶ 24. Wisconsin's OWI penalty scheme is fully consistent with *Apprendi*'s directive. In *McAllister*, our

separate offenses based on a prior conviction for an aggravated felony. *Almendarez-Torres*, 523 U.S. at 249 (Scalia, J., dissenting). This, in turn, would make the prior conviction an element of the offense, which the government was required, but failed, to include in the indictment. *Id.* Justice Scalia was clear that, although he provided "many arguments supporting the position that the Constitution requires the recidivism finding in this case to be made by a jury beyond a reasonable doubt," he did "not endorse that position as necessarily correct." *Id.* at 260. In questioning *Almedarez-Torres*, the *Apprendi* Court also noted the rule that an indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted. *Apprendi*, 530 U.S. at 490 n.15. Thus, although the *Apprendi* Court disapproved of the Court's holding in *Almendarez-Torres*, this disapproval was not rooted in a belief that the Constitution requires a prior conviction to be proved to a jury beyond a reasonable doubt.

supreme court concluded that the number of a defendant's prior OWI convictions to be counted for penalty enhancement purposes is not an essential element of the offense. *See State v. Matke*, 2005 WI App 4, ¶ 6, 278 Wis. 2d 403, 692 N.W.2d 265. This is true both in the traditional sense of the word "element," and in the constitutional sense. *McAllister*, 107 Wis. 2d at 538. Consequently, the matter need not be submitted to the jury at trial. *See Matke*, 278 Wis. 2d 403, ¶ 6. "[T]he proper time to determine the number of a defendant's prior convictions for sentence enhancement purposes is at sentencing, regardless of whether some convictions may have occurred after a defendant committed the present offense." *Id.*, ¶ 9.

¶ 25. We have already rejected a similar *Apprendi* challenge in the past. In *Matke*, the defendant, citing *Apprendi*, argued that his sentence for sixth-offense OWI "violate[d] due process because it permits the court to sentence him ... without requiring the State to convince a jury beyond a reasonable doubt that he had five prior [OWI] convictions." *Matke*, 278 Wis. 2d 403, ¶ 16. We concluded, in essence, that a defendant's prior OWI offenses, including the first offense, fall within *Apprendi*'s exception for prior convictions. *Id.* In a footnote, we explained that this conclusion flows from the Supreme Court's longstanding holding that recidivism is generally distinct from the commission of a crime. *Id.*, n.7 (citing *Apprendi*, 530 U.S. at 496). Indeed, recidivism "is as typical a sentencing factor as one might imagine." *Almendarez-Torres*, 523 U.S. at 230.

¶ 26. The appellants contend their first-offense OWIs should not be counted because their convictions for those offenses were secured without the procedural safeguards of a criminal trial. Specifically, the appel-

lants contend that a "prior conviction" under *Apprendi* must be based on a judgment from a proceeding in which the defendant had a right to a jury trial and the State bore the burden of proof beyond a reasonable doubt. Verhagen correctly notes that in a civil prosecution, there is no right to a twelve-person jury, and the verdict need not be unanimous. *See* WIS. STAT. § 756.06(2) (six-person jury in forfeiture actions); § 805.09(2) (five-sixths of jurors must agree on verdict). In addition, the burden of proof in a civil OWI prosecution is "clear, satisfactory, and convincing" evidence. *See* WIS. STAT. § 800.08(3).

¶ 27. We believe the appellants read too much into *Apprendi*. Notably, the Supreme Court did not declare unconstitutional enhanced penalties based on prior convictions obtained in the absence of the jury guarantee and criminal burden of proof. *See Apprendi*, 530 U.S. at 488 (merely noting that in *Almendarez-Torres*, the defendant had admitted the three earlier convictions for aggravated felonies, which had been entered pursuant to proceedings having substantial procedural safeguards of their own). Indeed, it appears what constitutes a "prior conviction" under *Apprendi* is a disputed matter among the federal courts of appeal. *See, e.g., United States v. Smalley*, 294 F.3d 1030, 1032 (8th Cir. 2002) (disagreeing with *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001)). The *Smalley* court expressed skepticism that "it is not only sufficient but necessary" that a conviction underlying an enhanced penalty be secured through a jury trial by proof beyond a reasonable doubt to qualify for the *Apprendi* exception. *Smalley*, 294 F.3d at 1032.

¶ 28. We cannot, nor will we attempt to, resolve this dispute among the federal courts today, as Wiscon-

sin law provides adequate guidance. Constitutional due process and jury trial requirements do not compel the determination of a prior conviction at trial. *Saunders*, 255 Wis. 2d 589, ¶ 44 (citing *Apprendi*, 530 U.S. at 490; *Almendarez-Torres*, 523 U.S. at 230). Prior OWI convictions are at most a "status element" to be submitted to the sentencing judge after the verdict has been rendered. *See Saunders*, 255 Wis. 2d 589, ¶ 46; *State v Alexander*, 214 Wis. 2d 628, 650, 571 N.W.2d 662 (1997).[5]

¶ 29. Wisconsin courts have repeatedly upheld the constitutionality of Wisconsin's OWI penalty structure. In *McAllister*, 107 Wis. 2d at 538–39, our supreme court determined that there is "no inherent unfairness in considering previous convictions as penalty enhancers rather than as an element of the charged offense." States have always been accorded the discretion to

___

[5] In *State v. Alexander*, 214 Wis. 2d 628, 645–46, 571 N.W.2d 622 (1997), our supreme court concluded that when a defendant admits to the status element of prior convictions, this admission dispenses with the need for proof of the status element, either to a jury or to a judge. To the extent that *Alexander* can be read as requiring that the fact of a prior conviction be submitted to a jury in the absence of an admission, it appears to have been overruled by *State v. Saunders*, 2002 WI 107, ¶ 46, 255 Wis. 2d 589, 649 N.W.2d 263 (defendant's repeater status is not an element of the underlying crime to be proved prior to verdict; instead, proof comes after the verdict and is heard solely by the sentencing judge). In fact, the *Alexander* court foreshadowed *Saunders* by noting that evidence of a defendant's admission to a prior OWI conviction has little probative value when determining whether the defendant subsequently drove while intoxicated. *Alexander*, 214 Wis. 2d at 644. "The status element is completely 'dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against [the defendant].' " *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 190 (1997)).

apportion responsibility between the judge and jury in criminal cases, there is no presumption of innocence with respect to previous convictions, and a defendant has the right to challenge the existence of previous penalty-enhancing convictions before the judge prior to sentencing. *Id.* Moreover, the OWI penalty structure satisfies due process as it gives "ample notice of the prohibited conduct and penalties." *State v. Banks*, 105 Wis. 2d 32, 51, 313 N.W.2d 67 (1981). First-offense OWI convictions are "valid for all purposes, including providing a basis for incarcerating [a] defendant as a second [or subsequent] offender pursuant to [Wis. Stat. § 346.65(2)(am)]." *State v. Novak*, 107 Wis. 2d 31, 42–43, 318 N.W.2d 364 (1982).

¶ 30. The appellants mention in passing one significant right lacking in civil first-offense cases: a defendant charged with an offense punishable only by forfeiture does not have a constitutional right to an attorney. *See State v. Novak*, 107 Wis. 2d 31, 41, 318 N.W.2d 364 (1982). In *Novak* we held that an uncounseled first-offense civil conviction is constitutionally valid to enhance a sentence in a subsequent case. *Id.* at 41–42. Given *Novak*'s holding, it is unsurprising that the appellants gloss over the right to counsel in connection with their *Apprendi* challenge. However, by requiring the State to prove the facts of an underlying civil conviction in a subsequent criminal proceeding, we would be, in effect, extending the right to counsel to offenses punishable only by forfeiture. Thus, accepting the appellants' theory may well require us to revisit *Novak*, which we cannot do. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997).

¶ 31. But the appellants' omission may affect their appeal in another way. A circuit court may not determine the validity of a prior conviction during an

214

enhanced sentence proceeding predicated on the prior conviction unless the offender alleges that a violation of the constitutional right to a lawyer occurred in the earlier case. *State v. Hahn,* 2000 WI 118, ¶ 28, 238 Wis. 2d 889, 618 N.W.2d 528, *opinion clarified on denial of reconsideration,* 2001 WI 6, 241 Wis. 2d 85, 621 N.W.2d 902.

¶ 32. With one notable exception—Van Asten's collateral attack, which we shall soon address—the appellants have not argued their prior convictions were unlawful or obtained in violation of their constitutional rights, including their right to counsel. Instead, they broadly attack a legislative scheme that, according to prior decisions of this court and our supreme court, comports with both the state and federal constitutions. We decline to hold that the underlying facts of a first-offense OWI must be submitted to the jury in a subsequent prosecution to impose an enhanced penalty. Accordingly, we reject the appellants' as-applied challenges.

¶ 33. Further, we note that the rule advocated by the appellants would unsettle much of Wisconsin law describing how prior convictions may be used. In *Alexander,* our supreme court expressed concern that the use of a prior conviction at trial would distract the jury and prejudice the defendant:

> Evidence of prior convictions may lead a jury to convict a defendant for crimes other than the charged crime, convict because a bad person deserves punishment rather than based on the evidence presented, or convict thinking that an erroneous conviction is not so serious because the defendant already has a criminal record.

*Alexander,* 214 Wis. 2d at 643. Accordingly, the *Alexander* court concluded that where a jury is in-

formed that a defendant has two or more prior convictions, suspensions, or revocations, "it is highly probable that the jury will infer that the prior offenses are driving offenses and likely OWI offenses." *Id.* at 644. In turn, this evidence would raise the inference that the defendant "has a bad character and a propensity to drink and drive . . . ." *Id.* at 650.

¶ 34. The appellants' request—that the State be required to prove the underlying elements of their first offenses to a jury beyond a reasonable doubt—runs contrary to our supreme court's concerns in *Alexander*. Essentially, they seek a trial within a trial. But the defendant runs the same risk regardless of whether the jury determines the facts of the prior charge or the fact of a prior conviction. By obligating the State to prove both the underlying facts of the earlier and subsequent offenses in the same proceeding, a defendant risks being convicted of the latter crime simply because the jury views him as a bad person. *See id.*

¶ 35. Finally, we reach the issue of Van Asten's collateral attack. A collateral attack on a prior conviction is "'an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding described by law and instituted for the purpose of vacating, reviewing, or annulling it.'" *State v. Ernst,* 2005 WI 107, ¶ 22 n.5, 283 Wis. 2d 300, 699 N.W.2d 92. (quoting *State v. Sorenson,* 2002 WI 78, ¶ 35, 254 Wis. 2d 54, 646 N.W.2d 354). A collateral attack on an earlier conviction may only be based on the denial of the defendant's constitutional right to a lawyer. *Id.,* ¶ 22. The defendant must "point to facts that demonstrate that he or she 'did not know or understand the information which should have been provided' in

the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel." *Id.*, ¶ 25.

¶ 36. "Whether a defendant knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel requires the application of constitutional principles to the facts." *Id.*, ¶ 10. We review the circuit court's findings of historical fact under the highly deferential "clearly erroneous" standard. *State v. Forbush*, 2011 WI 25, ¶ 10, 332 Wis. 2d 620, 796 N.W.2d 741. Whether a defendant has met the burden of establishing a prima facie case presents a question of law that we review de novo. *Ernst*, 283 Wis. 2d 300, ¶ 10.

¶ 37. There is clear evidence in this case that Van Asten's waiver was knowing, intelligent, and voluntary. Van Asten acknowledged that documents produced in his 1999 case indicated he was read the complaint. The circuit court interpreted this notation to mean that "the court commissioner read to Mr. Van Asten the complaint including what the charges were [and] what the penalties were." The minutes also showed he was advised of his "rights and options," which the circuit court understood to mean that Van Asten was "advised of his rights to have an attorney and his options to have a public defender if [he] qualified." Van Asten admitted he had requested a public defender. Thus, not only was Van Asten advised of his right to counsel, but he attempted to exercise it.[6] Minutes from a subsequent hearing show Van Asten requested more time to get an attorney. The

---

[6] Van Asten apparently applied for a public defender appointment but was informed he did not qualify.

court granted a limited extension. The court found this procedure consistent with Judge Des Jardins's standard procedure concerning pro se litigants.

¶ 38. Perhaps sensing the weakness of his case, Van Asten shifts tactics in his reply brief, all but conceding that he was aware of his right to counsel. Van Asten instead argues that "being advised of the right to counsel does not equate to being aware of the difficulties and advantages of proceeding to jury trial pro se." However, he does not develop an argument on this point nor cite any authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (declining to consider inadequately briefed arguments or arguments unsupported by references to legal authority). Indeed, his response to the State's exhaustive review of the evidence is limited to a few paragraphs in which Van Asten essentially states that he will stand on his original brief. Unrefuted arguments are deemed conceded. *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 108–09, 279 N.W.2d 493 (Ct. App. 1979).

¶ 39. In any event, Van Asten could not remember the 1999 proceeding or whether he was adequately advised of the difficulties and disadvantages of not having counsel. Van Asten testified he "slightly" remembered his 1999 case and could not recall whether he had discussed the benefits of an attorney.[7] Even his affidavit was ambiguous, as Van Asten did not affirmatively state that he was not advised of the benefits of representa-

---

[7] Although Van Asten effectively recanted this statement on cross-examination, the circuit court found Van Asten "doesn't really remember the details." The circuit court, as fact-finder, is the ultimate arbiter of a witness's credibility. *Lessor v. Wangelin*, 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998).

tion. Rather, Van Asten qualified that his assertion was only "to the best of [his] knowledge."

¶ 40. When the record shows only that the defendant does not remember what occurred during his case, he has failed to make a prima facie showing that his right to counsel has been violated. *State v. Hammill*, 2006 WI App 128, ¶ 11, 293 Wis. 2d 654, 718 N.W.2d 747. To establish a prima facie violation of the right to counsel, the defendant must provide "facts demonstrating he did not know or understand information that should have been provided to him." *Id.* "Any claim of a violation on a collateral attack that does not detail such facts will fail." *Ernst*, 283 Wis. 2d 300, ¶ 25. Under *Hammill*, we must reject Van Asten's collateral challenge; he simply cannot recall what happened.

*By the Court.*—Judgments affirmed.